FILED IN CHAMBERS
U.S.D.C. - Atlanta

AUG 3 1 2009

By: James N. Hatten, Clerk

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HI-TECH PHARMACEUTICALS, INC.,

           Plaintiff,

v.

                              CIVIL ACTION NO.
                              1:08-CV-569-ODE

DAVID A. BRADY,

           Defendant.

## ORDER

This breach of contract case is before the Court for findings of fact and conclusions of law after a bench trial on July 15, 2009. [Doc. #52]. Plaintiff Hi-Tech Pharmaceuticals ("Hi-Tech") has brought suit against Defendant David Brady ("Brady") to recover $190,000 that Hi-Tech claims it is owed for the manufacture and sale of pills containing ephedra. Brady acknowledges that the parties had an agreement for the sale of ephedra supplements, but alleges that he has already paid what he owed to Hi-Tech. Both parties have submitted proposed findings of fact to the Court, but the parties have not submitted trial briefs. The Court now makes the following findings of fact and conclusions of law.

I.  Findings of Fact

Hi-Tech Pharmaceuticals is a Georgia corporation that manufactures and sells dietary supplements and raw materials for such supplements. [Doc. #1 at 1]; Deposition of Jared Wheat at 35-

36 [Doc. #31].[1]   Jared Wheat ("Wheat") is the Chief Executive
Officer of Hi-Tech.   Wheat Deposition at 84.   Defendant David
Brady is a citizen of North Carolina.   [Doc. #1 at 1-2].   From
1995 to 1998, Hi-Tech sold dietary supplements to Brady and
companies owned by him.   Joint Pretrial Order, Stipulated Facts,
Attachment E at ¶ 1 [Doc. #41].   During this period, the parties'
usual practice entailed Brady submitting a purchase order and Hi-
Tech sending an invoice once the order had been filled.   Id. at ¶
2.   Hi-Tech's usual practice was to generate the invoice the same
day that manufacturing of the product was completed.   Wheat
Deposition at 64-65.   Brady paid the Hi-Tech invoices by check,
not wire transfer.   Stipulated Facts at ¶ 3.   Leanne Brady,
Brady's wife, was not named on any invoice generated during the
parties' business relationship from 1995-1998.   Id. at ¶ 17.

In 1998, pursuant to a consent decree with the Federal Trade
Commission, Brady stopped buying dietary supplements from Hi-Tech.
Deposition of David Brady at 187-88.   Four years later, however,
Brady and Wheat renewed their business relationship.   Starting in
2002, Wheat began selling generic pharmaceuticals to Brady through
an organization in Belize.   Id. at 110, 118.   Wheat contends that
the Belizean organization is unrelated to Hi-Tech.   Wheat
Deposition at 147-48.   Payments for the generic pharmaceuticals
were made to a variety of overseas accounts, including a
Panamanian account that was in Wheat's name and an account in the

---

[1] Because both Wheat and Brady are presently incarcerated,
their complete depositions were introduced into evidence at the
bench trial in lieu of live testimony.

name of one of Wheat's associates.   Brady Deposition at 206-07.
The payments were made via wire transfer, usually from Brady's
account in St. Kitts.   Id. at 56-57.

In January 2006, Brady and Wheat reached an agreement for the
purchase of dietary supplements containing ephedra from Hi-Tech.[2]
Id. at 221-22; Wheat Deposition at 116-17.   The supplements were
called E-Maxx 25.    Wheat and Brady disagree about both the
quantity of E-Maxx 25 purchased by Brady and the purchase price,
but both men concur that they had a purchase agreement.   Wheat
Deposition at 116-17; Brady Deposition at 220-22.   Wheat contends
that Brady purchased 15,250 bottles of E-Maxx 25 at a price of
$12.50 per bottle.   May 2006 Invoice, Defendants' Exh. 2.   Brady
contends that he ordered no more than 13,500 bottles of E-Maxx 25
at a price of $7.00 per bottle.   Brady Deposition at 210-11.

Brady received the E-Maxx 25 in approximately twelve separate
deliveries.    Wheat Deposition at 110.    Brady or one of his
associates picked up the E-Maxx 25 from Hi-Tech's facility in
Atlanta.   Id. at 108-10.   The pick-ups occurred between January

---

[2] At the time of the parties' agreement, sales of products
containing ephedra were legal in the United States.   The Food and
Drug Administration ("FDA") issued a rule banning the sale of
products containing ephedra in 2004.   See Nutraceutical Corp. v.
Von Eschenbach, 459 F.3d 1033, 1036 (10th Cir. 2006).   In 2005,
the United States District Court for the District of Utah held
that the FDA's rule was unlawful, and enjoined the FDA from
enforcing it.   Id. at 1035.   On August 17, 2006, however, the
United States Court of Appeals for the Tenth Circuit reversed the
district court ruling and remanded the case for an entry of
judgment in favor of the FDA.   Id. at 1043-44.   The conduct at
issue in this case occurred from January to June or July 2006,
and was therefore during the time that the ban on ephedra was not
being enforced.

2006 and June or July 2006. Brady Deposition at 211-12. The first delivery occurred over the Martin Luther King, Jr. holiday weekend in January 2006. Id. at 211. Wheat contends that Brady received the entirety of his order, while Brady is unsure about the quantity he received. Wheat Deposition at 108-09; Brady Deposition at 237. Neither party has produced any documentation indicating how many units were actually received by Brady.[3]

In May 2006, Wheat prepared an invoice for the E-Maxx 25. The invoice listed both Brady and his wife as purchasers, which was inconsistent with the invoices sent to Brady during the parties' dealings from 1995-1998. See May 2006 Invoice. The invoice listed a price of $12.50 per bottle and a quantity of 15,250 bottles, for a total of $190,625 owed. Id. The invoice lists three manufacturing dates: January 19, 2006, April 14, 2006,

---

[3] Hi-Tech has submitted three invoices from a company that coats pills for Hi-Tech. Plaintiff's Exh. 3. The invoices list quantities of E-Maxx 25 that were coated by the company. See id. The quantities are in kilograms, and there is no evidence before the Court indicating the proper conversion from kilograms to pills or bottles of pills. The Court finds these invoices to be of minimal relevance because they shed no light on the quantity of pills manufactured or received by Brady.

In addition, the Court finds the affidavits of Wheat that accompany the invoices to be of minimal probative value. Wheat was deposed on July 23, 2008 and submitted supplemental declarations dated September 9, 2008 and October 13, 2008. Plaintiff's Exhs. 5 and 6. The declarations appear to be, in part, a rebuttal to Brady's deposition testimony. Some of Wheat's statements in the declarations are based on his consultation with a production log that was not entered into evidence at trial. Accordingly, the Court finds that these affidavits are of minimal probative value, and will not rely upon them in deciding this case.

4

and May 29, 2006.  Id.  The 2006 Martin Luther King, Jr. holiday fell on January 16.  Stipulated Facts at ¶ 15.  The invoice thus lists an initial manufacturing date that is after Brady had picked up the first shipment of E-Maxx 25.  Brady claims that he never received this invoice from Wheat, and that he first saw it a few weeks before being served with the complaint in this case.  Brady Deposition at 231-32.

In September 2006, Wheat, Brady, and a number of their associates were indicted for violation of the Controlled Substances Act and the Federal Food, Drug and Cosmetic Act, as well as conspiracy to violate those acts.  See Criminal Indictment, Defendant's Exh. 7.  This indictment was unrelated to the parties' purchase agreement for E-Maxx 25.  See id.  In February 2008, Wheat filed the instant lawsuit, alleging that Brady never paid any amounts owed for the E-Maxx 25. [Doc. #1]. Brady contends that he has paid for whatever quantity of E-Maxx 25 he received, and asserts that payment for E-Maxx 25 in the amount of $60,000 was made into Wheat's Panamanian account.  Brady Deposition at 236-37.  Wheat acknowledges receiving wire transfers from Brady into his Panamanian account, but denies that any of them were payment for E-Maxx 25.  Wheat Deposition at 128-29, 136-37.  Instead, Wheat contends that any wire transfers he received were for the generic pharmaceuticals Wheat's Belize organization was selling to Brady.  Id.

A bench trial in this case was held on July 15, 2009.  The parties have submitted proposed findings of facts, but not trial briefs.

II.  Conclusions of Law

5

The Court's jurisdiction in this case is premised on the parties' diversity of citizenship.[4] Joint Pretrial Order at 2 [Doc. #41].   Because the contract was formed and executed in Georgia, Georgia contract law will govern the dispute.   See Convergys Corp. v. Keener, 582 S.E.2d 84, 87 (Ga. 2003) (reaffirming Georgia's adherence to the traditional conflicts of law rule of lex loci contractus).  Neither party has contested the application of Georgia law to this case. See [Dkt.].

Making findings of fact and conclusions of law in this case is complicated by the lack of documentary evidence.  Aside from the May 2006 invoice, the only evidence that speaks to the parties' intent and terms of the contract is the conflicting testimony in Wheat's and Brady's depositions.  Because these witnesses did not provide live testimony, assessing their credibility is very difficult.   Having read both men's depositions, the Court finds Wheat and Brady to be equally credible, or not credible, as the case may be.

This evidentiary situation means that the burdens of proof will play an important role in the resolution of the case; the outcome will turn on which party has the burden of proof and whether the scant evidence available is sufficient for him to meet it.   Hi-Tech has brought two claims against Brady: breach of

---

[4] As noted in the Facts section, Hi-Tech is a Georgia corporation and Brady is a citizen of North Carolina.  Hi-Tech's damages claim is for $190,625, which meets the amount in controversy requirement for jurisdiction under 28 U.S.C. § 1332.

contract and open account.[5]  Each of these claims is considered in turn below.

A.    Breach of Contract Claim

As the plaintiff and the party alleging breach of contract, Hi-Tech bears the initial burden of proving the existence of a contract and its terms. Broughton v. Johnson, 545 S.E.2d 370, 371 (Ga.App. 2001). A contract for the sale of goods for $500.00 or more is not enforceable unless there is a writing signed by the party against whom enforcement is sought "sufficient to indicate that a contract for sale has been made between the parties." O.C.G.A. § 11-2-201(1).[6]  An unsigned invoice does not satisfy this requirement. Jackson v. Meadows, 264 S.E.2d 503, 505 (Ga. App. 1980). However, if the party against whom enforcement is sought admits in his pleadings or testimony that a contract was made, the contract will be enforceable under O.C.G.A. § 11-2-201 to the extent of the quantity of goods admitted. O.C.G.A. § 11-2-201(3)(b).

Here, the contract was for the sale of goods for more than $500.00. Thus, in general, the contract would need to be in writing to be enforceable. However, Brady acknowledged in his deposition that he and Hi-Tech entered into a contract for the

---

[5] Hi-Tech's complaint also contains a claim for account stated. [Doc. #1 at 5]. However, the Joint Pretrial Order makes no reference to this claim. See [Doc. #41]. Because the Pretrial Order supercedes the pleadings, State Treasurer v. Barry, 168 F.3d 8, 9 (11th Cir. 1999), only the open account and breach of contract claims will be ruled upon in this order.

[6] Title 11 of O.C.G.A. is Georgia's version of the Uniform Commercial Code ("U.C.C.").

sale of E-Maxx 25.  Brady Deposition at 211-12, 215-16.  Brady stated that the agreed upon quantity was 13,500 bottles.  Id. at 211.  As a result of Brady's admissions, Hi-Tech has met its burden of proving the existence of the contract.  Under O.C.G.A. 11-2-201, the quantity term of the contract will be limited to 13,500.

In regard to the price term, the parties agreed to a price of at least $7.00 per bottle; Brady admitted as much in his deposition by stating that he believed the price was $7.00 per bottle.  Brady Deposition at 211.  In order to enforce a price term of $12.50 per bottle, Hi-Tech will need to prove that this is the price upon which the parties actually agreed.  In support of its argument that the price was $12.50 per bottle, Hi-Tech has submitted the May 2006 invoice and Wheat's testimony that the price was $12.50 per bottle.

Wheat's testimony, without more, cannot meet the burden of proving a price term of $12.50.  The May 2006 invoice also fails to meet Hi-Tech's burden.  The invoice is not signed by Brady, and therefore cannot be used to demonstrate Brady's intent to enter into a contract with a price term of $12.50.  Nor can the May 2006 invoice be construed as a proposal for additional terms under O.C.G.A. § 11-2-207.  O.C.G.A § 11-2-207 states "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."  O.C.G.A. § 11-2-207(1).  Such additional terms are to be construed

8

as proposals for additions to the contract, and will become part of the contract unless, inter alia, the additional terms materially alter it.    O.C.G.A.  §  11-2-207(2).    A material alteration "is an addition or change to the contract which would result in surprise or hardship if incorporated without express awareness by the other party." Coastal Indus. Inc. v. Automatic Steam Prods. Corp., 654 F.2d 375, 378 (5th Cir. 1981)[7] (applying the Alabama and New York versions of U.C.C. § 2-207).   Here, a change in the price term from $7.00 to $12.50 would result in surprise or hardship to Brady; the increase in price is almost 100%.    Accordingly, the Court finds that Hi-Tech has failed to prove that the price agreed upon by the parties was $12.50.   The Court  concludes  that  the  contract  between  the  parties  is enforceable for a quantity term of 13,500 units and a price term of $7.00 per unit.

Under these terms, Brady owes Hi-Tech $94,500 for the E-Maxx 25.    However, Brady has stated that he does not recall how many units of E-Maxx 25 he actually received.   Brady Deposition at 237. Brady has also stated that he believes he paid at least $60,000, and possibly $95,000, for the E-Maxx 25 he received.   Id. at 236-37.

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1206 (11th Cir. 1981) the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit handed down by the close of business on September 30, 1981.

Under Georgia law, the plaintiff bears the burden of proving the sale and delivery of goods in a breach of contract action. Christian v. Bryant, 27 S.E. 666, 666 (Ga. 1897). Thus, Hi-Tech bears the burden of proving delivery of the E-Maxx 25 to Brady. Wheat states in his deposition that Brady received all of the E-Maxx 25 manufactured by Hi-Tech. Wheat Deposition at 108. Brady or his associates arrived on approximately twelve occasions to pick up the E-Maxx 25, and Wheat helped them load up the shipments. Id. at 109. Each time Brady or one of his friends arrived to pick up a shipment, they took the entirety of what Hi-Tech had produced for Brady. Id. at 109-10. In his deposition, Brady states only that he is unsure as to whether he received all of the E-Maxx 25 he ordered. Brady Deposition at 237. Given this testimony, the Court concludes that Hi-Tech has met its burden of demonstrating delivery to Brady. Wheat testified to specific facts indicating that Brady and his associates received all of the E-Maxx 25 that was produced for Brady, and Brady has only testified that he does not know whether he received all of the E-Maxx 25. This is insufficient to rebut Wheat's testimony. Accordingly, the Court finds that 13,500 units of E-Maxx 25 were received by Brady.

Brady alleges that he has already paid Hi-Tech $60,000 for E-Maxx via Wheat's Panamanian account. Brady Deposition at 237. Payment is an affirmative defense that must be proven by the defendant. Christian, 27 S.E. at 666. At trial, Brady asserted that Wheat acknowledged receipt of $75,000 in his Panamanian account, but contended that the money was for payment for the sale of generic pharmaceuticals, not E-Maxx 25. Counsel did not

provide a citation in support of this claim.  Having reviewed the trial transcript and Wheat's deposition, the Court cannot find an admission by Wheat that he received $75,000.  Wheat does admit that Brady wired payment for generic pharmaceuticals to Wheat's Panamanian account, but Wheat does not identify the amount paid. See Wheat Deposition at 128-29.

Brady has presented no documentation in support of his claim that $60,000 or more was wired to Wheat's Panamanian account. Brady admitted in his deposition that he does not have any such records because it behooved neither of the parties to keep any records of their transactions.  Brady Deposition at 202.  Brady has also not presented any documentation to support his claim that the $60,000 payment was for E-Maxx 25, and not for the generic pharmaceuticals Brady admitted he had been purchasing from Wheat. Accordingly, Brady has not met his burden of proving payment for any or all of the E-Maxx 25 received.  As a result, Hi-Tech is entitled to judgment in the amount of $94,500.[8]

B.    Open Account Claim

---

[8] Brady has argued that payments into Wheat's Panamanian account can be considered payments to Hi-Tech, even though Wheat has insisted that the Panamanian account was separate from Hi-Tech.  Brady argues that, because Wheat and Hi-Tech are not legally distinct entities, the corporate veil should be pierced and payments to Wheat should be considered payments to Hi-Tech. The Court need not reach this argument because Brady has failed to carry his burden of proving that any payments for the sale of E-Maxx 25 were made to Wheat's Panamanian account.  In any event, there is no evidence before the Court to support a finding that the corporate veil should be pierced; there is no documentation or testimony indicating that Wheat did not maintain Hi-Tech as a separate entity.

Hi-Tech has also asserted an open account claim. "A supplier seeking recovery on an open account establishes a prima facie case by tendering an authenticated invoice and demonstrating that goods were delivered, but the invoice remains unpaid." Trad. Props., Inc. v. Performance Food Group of Ga., LLC, 662 S.E.2d 250, 251-52 (Ga.App. 2008). The Court has already found that Hi-Tech delivered the E-Maxx 25 to Brady and that Brady has not paid for it. Thus, the remaining element for Hi-Tech to prove is the authenticity of the May 2006 invoice.

Hi-Tech cannot recover on a claim of open account for two reasons. First, an open account claim is only appropriate when there is no bona fide dispute as to the amount due. Imex Int'l v. Wires Eng'g, 583 S.E.2d 117, 121 (Ga.App. 2003). Because the price term in the parties' contract was disputed here, open account is an inappropriate form of recovery for Hi-Tech.

Second, the authenticity of the invoice submitted by Hi-Tech is dubious. The first delivery of E-Maxx 25 was picked up by Brady over the Martin Luther King, Jr. holiday weekend in January 2006. Stipulated Facts at ¶ 10; Brady Deposition at 211. The invoice was allegedly created five months later, in May 2006. This is inconsistent with Hi-Tech's usual practice of generating an invoice the day the manufacturing process is completed. Wheat Deposition at 65. The invoice's dates are also inconsistent. The invoice lists January 19, 2006 as the first manufacturing date, but Brady picked up E-Maxx 25 over the Martin Luther King, Jr. holiday weekend, which was January 14-16, 2006. In addition, the invoice was addressed to both David Brady and his wife, which was inconsistent with prior invoices from Hi-Tech. Stipulated Facts

12

at ¶ 17.  Finally, Wheat testified that he believed he had made the invoice, but did not have any independent recollection of its creation; Wheat had to look at the date on the invoice to ascertain when it was generated.  Wheat Deposition at 115.  There is simply not enough evidence of the invoice's authenticity for the Court to award relief on an open account claim.  Accordingly, Hi-Tech's open account claim is denied.

IV.  Conclusion

The Court has carefully considered the parties' filings and the submitted evidence.  The Court concludes that Brady breached the parties' contract for the sale of E-Maxx 25, and that Hi-Tech is entitled to recover the amount of $94,500, plus applicable interest.  Hi-Tech is not entitled to recover on its claim of open account.   Judgment in the amount of $94,500 plus applicable interest is entered in Hi-Tech's favor, with costs taxed to Defendant.

SO ORDERED, this  31  day of August, 2009.



                                    _____
                                    ORINDA D. EVANS
                                    UNITED STATES DISTRICT JUDGE